IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RITA M. NIX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 07-G-1387-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Rita M. Nix, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

  (1)   whether the claimant is currently employed;
  (2)   whether he has a severe impairment;
  (3)   whether his impairment meets or equals one listed by the Secretary;
  (4)   whether the claimant can perform his past work; and

  (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

  In the instant case,  ALJ Jerome L. Munford determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," she did not suffer from a listed impairment.  The ALJ found the plaintiff able to perform "her past relevant work as a support clerk/data entry clerk, as well as a significant number of other sedentary jobs. . . ."  [R. 33-34].  Accordingly, the ALJ found that the plaintiff is not disabled within the meaning of the Social Security Act.

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the

alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited.

Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

## DISCUSSION

The ALJ found that the planitff:

> has the "severe" impairments of status post crush injury to the right leg with complex traumatic injuries and repair with residual chronic right posterior tibial neuropathy and chronic residual pain, cervical and lumbar disc disease, arthritis, obesity, and depression.

[R. 34]. Indeed, the plaintiff suffered her injury when her right leg was crushed between the bumper of a car and a truck. [R. 473]. The accident severed the main artery in her

leg, crushed the fibula, and damaged nerves and soft tissue, requiring extensive reconstructive and plastic surgery. [Id.].  Because of pain and medication side effects, and on advice of her treating physician, the plaintiff stopped working on June 10, 2001.

On July 22, 2003, the plaintiff's long-time treating physician, William T. Hall, M.D., a specialist in internal medicine, wrote the following:

> Mrs. Nix has been followed by me for chronic leg pain starting in September, 1996.  She was involved in an automobile accident and had a complex fracture of the right lower extremity.  She had surgery several times but had a difficult recovery.  And left her with chronic pain due to severe nerve damage of the leg.  She had been treated with anti-inflammatory agents, multiple relaxants and narcotics.  She returned to work several times however she was not able to perform her job as expected because of the persistent pain.  <u>Because of the required pain medication she was not able to focus or concentrate at a substantial level.</u>  Because she was not able to perform her job this increased her stress level to the point she became chronically depressed due to pain and chronic anxiety therefore we took her off work in June, 2001 due to total disability.  And she had been followed by me on a monthly basis for pain management.
>
> She also has several other problems and she begin [sic] to develop back pain because of guarding her right leg and she developed a herniated disc causing chronic back pain.  She has also chronic bronchitis due to emphysema from tobacco, anxiety and depression due to her medical problems, chronic bursitis of the right shoulder, arthritis of the left hip due to pains in her gait guarding the right leg and progressive weight gain due to her inactivity.  Therefore her multiple condition [sic] has increased her risk of returning back to being gainfully employed.  Her prognosis is poor for recovery.  She is not able to do any prolonged standing, sitting, riding, lifting, bending or being able [sic] to work in any environment that will require her to perform any task that may require prolonged concentration.  <u>Her condition will not allow her to do any kind of full-time competitive work because of persistent pain and medication required for relief.</u>  Her medication[s] include narcotics Oxycontin 1 q8h, Lortab 1-2 p4-6h for breakthrough pain, Soma for muscle relaxation, Neurotin [sic] for neuropathic pain, anti-anxiety agent occasional and medication for insomnia.  She also has been tried on several antidepressant medication[s]

>to include Trazodone, Welbutrin [sic] and Celexa. This patient is 100% totally disabled to return to work and her condition is permanent.

[R. 338-339](emphasis added). Dr. Hall also completed a "Multiple Impairments Questionnaire" provided by the plaintiff's attorney. Dr. Hall's opinion was that the plaintiff suffers from chronic pain of the leg, arthritis and neuropathy due to the plaintiff's leg fracture. [R. 340]. He cited edema, tenderness and spasms as support for his diagnosis. [Id.]. Because of the leg pain, which he described as constant and increasing with walking and standing, Dr. Hall opined that the plaintiff could sit for three hours, and stand or walk for two hours during an eight-hour day. [R. 342]. Sitting continuously was not recommended by Dr. Hall, who believed that the plaintiff should stand and move every half hour. [Id.]. Dr. Hall also found that the plaintiff must not stand or walk continuously in a work setting. [R. 343].

In rejecting the testimony of the plaintiff's treating physician, the ALJ stated, "Despite Dr. Hall's repeated statements that the claimant experienced disabling pain, his records and reports also indicate that the medication to no more than a mild to moderate level." [R. 31]. Although the ALJ correctly noted that the plaintiff's disability claim is based on pain and medication side effects, he rejected Dr. Hall's opinion because the Commissioner's consulting examiner made no mention of those side effects. [R. 30]. "Her failure to report adverse medication side effects to other examining or treating practitioners is inconsistent with her prior assertions, and undermines her overall credibility on the issue." [R. 31]. This conclusion is not based on substantial evidence.

The mere absence of side effects in the reports of the Commissioner's consulting examiners is not a sufficient reason to conclude that the side effects did not exist.

The Commissioner recognizes that pain and other subjective symptoms cannot be objectively measured and that the same physical impairment may produce differing levels of pain in different individuals.

> Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; e.g., someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis.

20 C.F.R. §404.1545(e).  The medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

The plaintiff's treating physician characterized her pain as a nine or 10 on a scale of one to 10 without medication.  For years, he regularly prescribed for her Lortab, Neurontin, Soma and Oxycontin.  [R. 291-292, 298, 350, 352, 357 and 390].  Because Oxycontin was too expensive for her, Dr. Hall replaced that drug with methadone.  [R. 352].  While these medications were effective in reducing the plaintiff's pain to a

moderate level, it is ridiculous for the ALJ to hold that a daily regimen of these narcotics are not accompanied by serious side effects.  Drowsiness and impaired concentration are inherent and documented side effects of these narcotics. The plaintiff testified about these limitations at the ALJ hearing, and the plaintiff's treating physician consistently noted these side effects.  [R. 273, 473, 476-477].

       The plaintiff testified that she goes to church weekly and attends parent-teacher conferences at her daughter's school.  [R. 477].  Also, she attends Wednesday youth meetings and Thursday choir rehearsals at church.  [Id].  At home, she cooks and cleans some, but stops when she begins to hurt, and her children and husband perform most of the household chores.  [R. 478].  She goes grocery shopping with assistance. [Id.].  She testified that because of fatigue and pain, she rarely gets dressed, and ". . . during the week, I might put on my clothes but twice a week.  Other than that I'm in my gown."  [R. 479].  ALJ Munford held that the plaintiff's "daily activities are also inconsistent with disabling pain or limitations."  [R. 32].  He continued:

> Although the claimant testified that she spent five to six hours of an eight hour day lying down, she further testified that she was able to do some cooking and some housework, and spent much of her time watching television.  She testified that she was also able to do some shopping with others, and that she spent a significant amount of time at church, including singing in the church choir.  These activities are not inconsistent with an ability to perform a range of sedentary work on a sustained basis.

[Id.].   The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true.  The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain.  The ability to watch television,

11

do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.

Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

   At the hearing, the ALJ examined a vocational expert, James Hare. Part of that examination follows:

> ALJ:  The questions that I've given you at this point have asked you to consider pain at a mild to moderate level. In any of these scenarios which I've posited, if I determine the pain to be moderately severe to severe, would she be capable of working in general?
>
> VE:  If it's, I would say of a chronic nature, no, Your Honor. It would interfere with one's concentration, ability to get along with others, possibly, can interfere with one's attendance, one's pace and persistence, one's ability to get along with one's supervisor.
>
> ALJ:  If the medication side effects are also determined by me to impose moderately severe to severe limitations on Ms. Nix's ability to concentrate, to have the requisite pace, persistence and attendance necessary to perform past relevant work activity or the other jobs that you have identified, Sir, would she generally be able to work?
>
> VE:  No, Your Honor.
>
> ALJ:  What impact, if any, would the limitation of having to lay [sic] down, for our purposes the laying [sic] down has to occur during the regularly scheduled work tour, and Mr. Hare, we'll say that the laying [sic] down is about, let's say three to four hours. I know that the claimant testified five to six hours. If I determine the laying [sic] down has to be at the

> rate that I've identified, would she be capable of working generally?
>
> VE: She would not.
>
> EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:
>
> ATTY: Using the limitations frequent interference with attention and concentration due to pain as fatigue, as well as limited use of the hands and no repetitive use of the hands, how would that affect the sedentary work pool?
>
> VE: I would, that would preclude sedentary work in general.

[R. 499-500]. Because the ALJ's reasons for discrediting the plaintiff's pain testimony and the testimony of her treating physician are not supported by substantial evidence, their testimony must be taken as true. As such, the Commissioner has not met his burden to show that the plaintiff can perform other work, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.

**CONCLUSION**

For the reasons set forth above, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 25 July 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.